IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| AMAZON.COM, INC. ET AL, | ) | CV-18-00767-BLF |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | APRIL 27, 2018 |
| | ) | |
| PERSONAL WEB TECHNOLOGIES, LLC ET AL, | ) | PAGES 1-48 |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

_______________________________

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFF: **BY: MICHAEL SHERMAN**
**SANDEEP SETH**
**WESLEY MONROE**
STUBBS ALDERTON MARKILES, LLP
15260 VENTURA BLVD., 20TH FLOOR
SHERMAN OAKS, CA 91403

FOR THE DEFENDANT: AMAZON **BY: J. DAVID HADDEN**
**PHILLIP HAACK**
**SAINA SHAMILOV**
FENWICK & WEST LLP
SILICON VALLEY CENTER
801 CALIFORNIA STREET
MOUNTAIN VIEW, CA 94041

OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

SAN JOSE, CALIFORNIA APRIL 27, 2018

P R O C E E D I N G S

(COURT CONVENED AT 9:57 A.M.)

09:57:03 THE CLERK: CALLING LOWEST CASE 18-0154. PERSONAL

09:57:09 WEB VERSUS ATLASSIAN, AND ALL PERSONAL WEB CASES SCHEDULED.

09:57:27 MR. SHERMAN: GOOD MORNING, YOUR HONOR.

09:57:28 MICHAEL SHERMAN, STUBBS, ALDERTON, MARKILES. I REPRESENT

09:57:35 THE PERSONAL WEB AND LEVEL 3 IN THOSE CASES THAT THEY FILED, AS

09:57:41 WELL AS I AM REPRESENTING THEM IN THEIR CAPACITY AS DEFENDANTS

09:57:45 IN THE CASE FILED.

09:57:47 I HAVE WITH ME MY COLLEAGUES, SANDEEP SETH AND

09:57:51 MR. WESLEY MONROE.

09:57:59 MR. HADDEN: GOOD MORNING, YOUR HONOR.

09:58:00 DAVE HADDEN FOR AMAZON AND CUSTOMER DEFENDANTS. I HAVE

09:58:03 WITH ME SAINA SHAMILOV AND PHIL HAACK.

09:58:07 THE COURT: GOOD MORNING. GOOD MORNING TO EVERYONE.

09:58:13 SO MY DOCKET EXPLODES EVERY DAY WHENEVER YOU TAKE A

09:58:19 BREATH, BECAUSE YOU TAKE A BREATH FIFTEEN TIMES BEFORE YOU CAN

09:58:22 DO ANYTHING.

09:58:25 AND CLEARLY, THIS MOTION IS, THE PRELIMINARY INJUNCTION OR

09:58:29 THE MOTION TO STAY, WHICHEVER SIDE WE ARE ON, IS AN ATTEMPT TO

09:58:37 BRING SOME ORDER TO WHAT IS OTHERWISE A LITTLE BIT OF CHAOS.

09:58:42 BUT LET ME START WITH WHAT I ASKED YOU TO BE PREPARED TO

09:58:45 DISCUSS. I HAVE ABOUT 30 CASES IN ALL THAT PERSONAL WEB HAS

09:58:48 FILED AGAINST INDIVIDUAL DEFENDANTS, PLUS THE AMAZON CASE. AND

09:58:56 SO NOT ALL OF THE CASES ARE BEFORE ME TODAY, CORRECT?

09:59:01 MR. SHERMAN: I BELIEVE THAT'S BECAUSE, FOR WHATEVER REASON, MOTIONS FOR STAY WEREN'T FILED IN THOSE CASES, PERHAPS.

09:59:07 THE COURT: RIGHT.

09:59:07 MR. SHERMAN: I CAN'T THINK OF ANOTHER REASON.

09:59:09 MR. HADDEN: THERE ARE CASES IN OTHER JURISDICTIONS, YOUR HONOR.

09:59:12 THE COURT: NO, I JUST MEAN THE 30 BEFORE ME, NOT ALL OF THOSE CASES ARE FILING MOTIONS TO STAY RIGHT NOW.

09:59:18 MR. HADDEN: CORRECT. I THINK SOME OF THE DEFENDANTS HAVE NOT BEEN SERVED, YOUR HONOR.

09:59:22 THE COURT: THAT COULD BE. OKAY. AND THAT'S FINE.

09:59:25 SO I KNOW THAT YOU ARE GOING TO THE MDL COMMITTEE AT THE END OF MAY. AND I'M NOT ACTUALLY FAMILIAR WITH PATENT MDL'S, I DON'T KNOW WHETHER YOU ARE.

09:59:35 MR. SHERMAN: YOUR HONOR, INTERESTINGLY, THE *NATIONAL LAW JOURNAL* HAD AN ARTICLE, I THINK APPROXIMATELY FOUR OR FIVE WEEKS AGO SAYING, YOU KNOW, HEADLINE, THERE MAY BE MDL'S IN PATENT CASES FOLLOWING TC HEARTLAND.

09:59:54 THE COURT: YEAH.

09:59:55 MR. SHERMAN: AND THE REPORTER WHO WROTE THIS ARTICLE ABOUT THIS POTENTIALLY NEW DEVELOPMENT, AND THERE ARE SEVERAL CASES, IT WAS REPORTED, BEFORE THE MDL PANEL NOW.

10:00:08 AND AS I'M SURE COUNSEL WOULD AGREE, ONE OF THE PRIMARY ISSUES THERE IS GOING TO BE THE LEVEL OF COMMONALITY. I MEAN,

THE ISSUE OF EFFICIENCY, I THINK IS FOREGONE, IF THERE'S COMMONALITY.

SO WHAT HAD HAPPENED, IF I MAY, WAS IN EARLY JANUARY, MY CLIENTS FILED PATENT CASES, PATENT LITIGATION CASES IN THE NORTHERN DISTRICT, IN THE EASTERN DISTRICT OF TEXAS, IN DELAWARE, IN THE SOUTHERN DISTRICT OF NEW YORK, AND THE EASTERN DISTRICT OF NEW YORK, IN THE CENTRAL DISTRICT OF CALIFORNIA, AND THERE ARE MORE CASES TO BE FILED BECAUSE MY CLIENT'S PATENTS, WE BELIEVE, ARE BEING INFRINGED, OKAY.

AND AMAZON THEN FILED ITS DJ ACTION IN EARLY FEBRUARY. WE HAD BEEN WORKING ON AN MDL MOTION, AND THERE'S A LOT OF PAPERWORK TO PUT TOGETHER WITH RESPECT TO THOSE MOTIONS.

THE COURT: OF COURSE.

MR. SHERMAN: AND THEN THE NEXT THING THAT HAD HAPPENED WAS WE WERE SERVED WITH AMAZON'S PRELIMINARY INJUNCTION MOTION THAT WE ARE HERE ON THIS MORNING.

WHEN I SAW THE PAPERS, I REALIZED, OH MY GOODNESS, WE GOT A QUICK RETURN DATE ON THIS PI MOTION, AND THERE'S A LOT OF WORK TO BE DONE.

AND SO ONE'S FIRST INSTINCT, OF COURSE, IS TO CALL OPPOSING COUNSEL, AND WE HAD A VERY PLEASANT CONVERSATION, AND I SAID MR. HADDEN, I NEED SOME MORE TIME, AND HE WAS GRACIOUS ABOUT IT.

AND I SAID, BY THE WAY, WE ARE FILING OUR MDL MOTION THE NEXT DAY OR TWO OR THREE, WHY DON'T WE TRY TO DO THIS IN SOME

10:02:04 STAGED OR EFFICIENT WAY, WE DON'T THINK YOU ARE RIGHT ON THE PI MOTION, YOU THINK YOU ARE RIGHT ON THE PI MOTION.

BUT ULTIMATELY, AT THE END OF THE DAY, ESPECIALLY SINCE YOU AGREE WITH US, THIS IS ALL COMMON. WHY DON'T WE GET BEFORE THE MDL PANEL SO WE CAN BRING SOME EFFICIENCY TO THIS PROCESS AND NOT HAVE TO DEAL WITH MULTIPLE JUDGES.

BY THE WAY, YOUR HONOR WAS SELECTED BY US AS A RECOMMENDATION TO THE MDL PANEL. CONGRATULATIONS.

THE COURT: THAT'S A BACKHANDED COMPLIMENT, IF EVER I HEARD ONE.

MR. SHERMAN: SO THE DISCUSSION THAT ENSUED WAS, HAVE THE PI MOTION GO FORWARD AFTER THE MDL.

THE COURT: SO WHAT'S INTERESTING TO ME ON THIS, MR. SHERMAN, IS IF I WERE TO GRANT THE PI MOTION, I DON'T THINK THERE WOULD BE ANY NEED FOR AN MDL.

AND SO THEN I'M IN THIS, WELL, BECAUSE THEN I'VE STAYED ALL CASES YOU HAVE BROUGHT, OR COULD BRING UNTIL I RESOLVE THE AMAZON ISSUES. AND THERE'S NO REASON FOR AN MDL.

AND I'M NOT SUGGESTING THAT THE MDL COMMITTEE WOULDN'T SEE IT DIFFERENTLY, YOU MIGHT STILL WANT TO BRING THEM ALL TO ME SO THAT I COULD SUPERVISE THE RESOLUTION OF THE DISPUTE. AND I NEVER HAVE A POSITION ON WHETHER IT SHOULD BE AN MDL OR NOT. BUT I KNOW THAT THE MDL COMMITTEE GENERALLY ADVISES JUDGES TO WHO THESE INDIVIDUAL CASES TO CONTINUE AND HEAR AND DECIDE MATTERS IN THE NORMAL COURSE AND PAY NO ATTENTION TO THE MDL

HEARING SCHEDULE. AND I RESPECT THAT.

AND YET, MANY JUDGES STAY CASES PENDING THAT DECISION.

MR. SHERMAN: WE'VE DONE THAT IN NEW YORK, FOR EXAMPLE, AND IN THE EASTERN DISTRICT OF TEXAS, FOR EXAMPLE.

THE COURT: RIGHT.

MR. SHERMAN: AND SO THE POINT IS WHETHER IT WAS WITH THE FENWICK AND WREST OFFICE, BECAUSE THEY'VE APPEARED ON BEHALF OF MANY DEFENDANTS ALL OVER THE PLACE, OR WITH OTHER COUNSEL IN THOSE FEW INSTANCES, WE'VE GOTTEN TO THE POINT, I BELIEVE.

AND BY THE WAY, YOUR HONOR, IF THERE ARE TECHNICAL QUESTIONS THAT ARISE, I MAY HAVE TO ASK ONE OF MY COLLEAGUES TO JUMP IN. I HOPE YOUR HONOR DOESN'T MIND.

THE COURT: YOU KNOW WHAT, I WOULD MUCH RATHER HEAR ONCE FROM THE PERSON WHO CAN ANSWER THE QUESTION THAN ONCE FROM THE PERSON WHO CAN'T AND THEN FROM THE ONE WHO CAN. I WELCOME THAT.

MR. SHERMAN: OKAY. THANK YOU.

SO WE ARE NOT AVERSE TO HEARING WHAT OTHER TRIBUNALS MIGHT HAVE TO SAY ON THE ISSUE OF EFFICIENCY AND ECONOMY BEFORE HURDLING IN.

YOUR HONOR DID MAKE THE OBSERVATION THAT, WELL FROM AN EFFICIENCY STANDPOINT, IF THE PI MOTION WERE GRANTED, MAYBE THAT'S THE MOST EFFICIENT THING AND THERE WOULDN'T EVEN NEED TO BE --

THE COURT: WELL, IT'S NOT INEFFICIENT, IT JUST NEEDS TO BE CORRECT.

MR. SHERMAN: I UNDERSTAND.

PUNISHING SAUDI ARABIA, THEY PUNISH PEOPLE FOR JAY WALKING BY CAPITAL PUNISHMENT, SO THERE'S NO JAY WALKING. SO BY ANALOGY, I'M SUGGESTING THAT WE HAVE SOME VERY GOOD REASONS WHY SUBSTANTIVELY, MERITS-WISE, THE PI MOTION OUGHT NOT BE GRANTED.

PERHAPS ONE OF THE MORE IMPORTANT ONES BEING THE DATATERN DECISION OUT OF THE FEDERAL CIRCUIT REQUIRES A CASE -- WELL, THE ARTICLE III AND THE DATATERN DECISION REQUIRES A CASE FOR CONTROVERSY.

AND SINCE PERSONAL WEB LEVEL 3 HAVE NOT FILED A COMPLAINT AGAINST AMAZON ALLEGING DIRECT INFRINGEMENT BY AMAZON, AMAZON COULD, IF IT SO CHOSE, SEEK TO INTERVENE IN THOSE ACTIONS, AND THEY'VE ALREADY FILED A BRIEF BEFORE THE MDL PANEL.

YOUR HONOR HAD REMARKED IN AN EARLIER MATTER ABOUT THE NEEDLESS PROLIFERATION OF LITIGATION, AND I COULDN'T AGREE MORE, WHICH IS WHY EITHER THE MDL PANEL IS GOING TO ACKNOWLEDGE THE FACT THAT THERE'S A LOT OF COMMONALITY HERE ON ISSUES SUCH AS THE USE OF THE RUBY ON RAILS ARCHITECTURE THAT WE ALLEGE IN CONJUNCTION WITH THE INDIVIDUAL DEFENDANT'S CONTROL OVER ETAGS, IS THE THEORY OF INFRINGEMENT, OR THEY ARE GOING TO SAY, NO, LET'S JUST HAVE 55 CASES.

THE COURT: THE MDL ISSUE, AND YOU KNOW MORE ABOUT THIS THAN I DO, THE AMERICAN INVENTS ACT ELIMINATED THE

10:06:51 OPPORTUNITY FOR A PLAINTIFF TO SUE MULTIPLE DEFENDANTS IN A
10:06:54 SINGLE CASE.

10:06:55 MR. SHERMAN: THAT'S RIGHT.

10:06:56 THE COURT: OKAY. SO NOW HERE WE ARE GOING TO AN
10:06:59 MDL, ISN'T THAT A BACK DOOR WAY AROUND THE AI A?

10:07:02 MR. SHERMAN: WELL, YOU KNOW, I DON'T BELIEVE --

10:07:06 THE COURT: IS THAT A YES?

10:07:07 MR. SHERMAN: NO, IT'S NOT A YES, BECAUSE CONGRESS,
10:07:10 IN ITS WISDOM, DECIDED THAT IT DIDN'T WANT TO HAVE A WHOLE
10:07:15 BUNCH OF FOLKS GOING TO THE EASTERN DISTRICT OF TEXAS, OR WHAT
10:07:19 WE WILL CALL PLAINTIFF-FRIENDLY JURISDICTIONS, AND SO THEY
10:07:22 DIDN'T WANT THAT KIND OF RAMPANT VENUE FORUM SHOPPING.

10:07:30 AND YET, YOU KNOW, AMAZON, IT'S PAPERS EXCORIATES US FROM
10:07:36 FILING A LOT OF LAWSUITS. WELL, YOU CAN'T HAVE IT BOTH WAYS.

10:07:40 THE COURT: SO THAT'S NOT MY CONCERN. YOU CAN FILE
10:07:42 AS MANY LAWSUITS AS YOU WANT. AND YOU HAVE TO DO EACH ONE
10:07:47 SEPARATELY, AND THEN HERE -- BUT AGAIN, THE MDL COMMITTEE WILL
10:07:51 HAVE TO GRAPPLE WITH THAT ISSUE AND IT MAY OR MAY NOT BE A
10:07:54 CONCERN OF THE PARTIES.

10:07:56 WHAT I'M LOOKING AT HERE, AND I'M NOT SURE WHETHER I WOULD
10:08:00 STAY THIS ACTION JUST UNTIL THE MDL RULES, I'M LESS INCLINED TO
10:08:06 DO THAT SINCE I HAVE SO MANY OF THEM, THAT, YOU KNOW, IF I HAD
10:08:09 ONE CASE, I WOULDN'T WANT TO BE THE LONE PERSON WANDERING IN
10:08:14 THE DESSERT OUT THERE BEYOND ANYONE ELSE, BUT I HAVE THE
10:08:19 OVERWHELMING MAJORITY OF THE FILED CASES, SO I THINK I NEED TO

10:08:22 MOVE FORWARD.

10:08:23 OKAY. THE OTHER THING I WANT TO MOVE INTO IS I HAVE TWO 10:08:29 SIDES OF A COIN. I'M ASKED TO EITHER GRANT A PRELIMINARY 10:08:34 INJUNCTION ON BEHALF OF AMAZON TO ENJOIN PERSONAL WEB FROM 10:08:42 PURSUING ANY OF, WE WILL CALL THEM CUSTOMER CASES, UNTIL THE 10:08:47 DECLARATORY RELIEF ACTION IS CONCLUDED. SO THAT WOULD HAVE 10:08:51 SCOPE BEYOND THE CASES I HAVE.

10:08:52 OR IN THE ALTERNATIVE, SEPARATE MOTION BY THE INDIVIDUAL 10:08:57 DEFENDANTS TO STAY THE CASE PENDING CONCLUSION.

10:09:01 YOU'VE BRIEFED IT AND INTERCHANGED THE WORDS, AND I KNOW 10:09:04 YOU ARE JUST GIVING ME ALTERNATIVES, AND I REALLY APPRECIATE 10:09:08 THAT. I AM MORE INCLINED TO STAY THE CASES ON AN INDIVIDUAL 10:09:14 BASIS AND THEN SUA SPONTE STAY, ISSUE AN ORDER TO SHOW CAUSE 10:09:19 WHY I SHOULDN'T STAY THE REMAINDER OF THEM.

10:09:21 I KNOW I DON'T HAVE, IF THERE'S NO SERVICE I HAVE TO WAIT 10:09:25 ON THAT, BECAUSE I THINK THAT MIGHT BE A MORE PRUDENT WAY TO 10:09:30 PROCEED.

10:09:32 SO LET'S GET INTO THE SUBSTANCE HERE NOW.

10:09:34 MR. SHERMAN: MAY I GET MY NOTES AT COUNSEL TABLE?

10:09:36 THE COURT: SURE.

10:09:37 MR. HADDEN: IF WE ARE GOING TO ARGUE, IT'S OUR 10:09:39 MOTION, CAN I ARGUE, YOUR HONOR?

10:09:40 THE COURT: SO I'M GOING TO MENTION A FEW ISSUES AND 10:09:42 THEN I WANT TO HEAR FROM YOU.

10:09:43 MR. HADDEN: SURE. THANK YOU, YOUR HONOR.

THE COURT: AND THIS COURTROOM, I'M STRUGGLING TO GET THE SOUND SYSTEM RIGHT. I'M NORMALLY IN A SMALLER COURTROOM. SO I NEED YOU RIGHT THERE, AND I'M SORRY YOU HAVE TO BE THERE.

MY VIEW OF THE PAPERS IS THAT I AGREE WITH MR. HADDEN THAT THE AMAZON CASE SHOULD GO FORWARD TO RESOLUTION. AND I WILL SAY THAT I SPENT QUITE A BIT OF TIME, MR. SHERMAN, READING THE COMPLAINT AND READING THE EXPERT REPORTS THAT YOU PROVIDED, BECAUSE ON THE PRELIMINARY INJUNCTION, OF COURSE YOU NEEDED EVIDENCE.

AND I AM NOT SATISFIED THAT YOU HAVE ADEQUATELY ALLEGED THE ROLE THAT RUBY ON RAILS PLAYS, OR THAT YOU EVEN CAN BASED ON DR. RUSS'S REPORT OR DECLARATION, I SUPPOSE. AND THAT WOULD BE MADE CLEAR TO ME IN INFRINGEMENT CONTENTIONS.

BUT WHAT DOES SEEM CLEAR IS THAT THE PRELIMINARY INJUNCTION MOTION DOES MAKE CLEAR THAT A SUBSTANTIAL, IF NOT ALL OF THE ISSUES PRESENTED, OVERLAP AND CAN BE DETERMINED, BECAUSE WHAT -- IT APPEARS WHAT AMAZON IS ASKING FOR IN DECLARATORY RELIEF IS A FINDING THAT NEITHER S3 OR THE TOOL KIT TO CUSTOMERS THAT SHOWS HOW TO USE RUBY ON RAILS INFRINGES.

AND IT DOESN'T HAVE TO BE COMPLETE OVERLAP, IT DOESN'T HAVE TO COMPLETELY RESOLVE THE CASE FOR ME TO ENJOIN OR STAY BASED ON THE CUSTOMER EXCEPTIONS.

SO I'M INCLINED TO DO THAT. AND I DON'T SEE -- I MEAN, CERTAINLY EITHER WITH A PRELIMINARY INJUNCTION OR WITH A STAY, IF YOU WERE TO ADEQUATELY ALLEGE DIFFERENTLY IN YOUR

10:11:55 INFRINGEMENT CONTENTIONS, THAT WOULD BE GROUNDS TO EITHER
10:11:59 MODIFY OR LIFT THE PRELIMINARY INJUNCTION OR LIFT THE STAY.

10:12:01 AND SO THIS IS, YOU KNOW, IN A SENSE, I'M GOING TO GIVE
10:12:04 YOU THE KEYS TO THE JAI HOUSE DOOR HERE IN LOCKING UP YOUR CASE
10:12:09 TO MAKE THOSE PLEADINGS.

10:12:11 BUT YOU BARELY MENTION RUBY ON RAILS. YOU DON'T MAP IT ON
10:12:17 TO THE CLAIMED ELEMENTS AT ALL. IT'S NOT EVEN CLEAR THAT IT
10:12:21 MAPS ON TO ALL OF THE CLAIMS THAT YOU'VE ASSERTED.

10:12:24 IT'S NOT EVEN CLEAR TO ME WHAT CLAIMS YOU ARE ASSERTING OR
10:12:29 HOW THIS -- I MEAN, THE COMPLAINT IS FINE AS FAR AS I'M
10:12:33 CONCERNED.

10:12:34 I MEAN, I KNOW WE USED TO DO A MUCH HIGHER LEVEL
10:12:38 COMPLAINT. I'M NOT ASKING FOR AN AMENDMENT TO THE COMPLAINT,
10:12:41 AND MAYBE THERE WILL BE A MOTION TO DISMISS ON THAT VERY BASIS,
10:12:45 I'M NOT DECIDING THAT NOW, BUT THAT'S NOT MY CONCERN HERE.

10:12:48 I REALLY WANT TO SEE INFRINGEMENT CONTENTIONS WHERE YOU
10:12:49 HAVE TO ACTUALLY MAP IT.

10:12:51 MR. SHERMAN: YOUR HONOR, IF I MAY, I OBVIOUSLY HAVE
10:12:54 A BIT OF THE LABORING ORE HERE.

10:13:02 YOUR HONOR INDICATED THAT THERE WAS CONSIDERATION OF THE
10:13:06 EXPERT REPORTS, AND I APPRECIATE THAT. AND I'M NOT EXACTLY
10:13:13 SURE WHICH MOTION NOW WE ARE TALKING ABOUT.

10:13:17 THE COURT: WELL, THEY AREN'T PARTICULARLY DIFFERENT
10:13:19 FROM EACH OTHER, ALTHOUGH THE EVIDENCE IS ONLY, I THINK,
10:13:23 SUBMITTED.

MR. HADDEN: IN THE PRELIMINARY INJUNCTION.

THE COURT: IN THE PRELIMINARY INJUNCTION.

MR. HADDEN: YES, YOUR HONOR.

MR. SHERMAN: THE REASON I MENTION THAT, YOUR HONOR, IS THIS, I DO BELIEVE THAT THERE MAY BE SOME ELEMENT OF CART BEFORE HORSE.

THE COURT: OKAY.

MR. SHERMAN: OKAY. AND I TALK ABOUT CART BEFORE HORSE BECAUSE, AND I ALLUDED TO THIS IN THE DATATERN FEDERAL CIRCUIT DECISION, THIS IS WHAT THE COURT SAID, TO THE EXTENT THAT APPELLEES ARGUE THAT THEY HAVE A RIGHT TO BRING THE DJ ACTION SOLELY BECAUSE THEIR CUSTOMERS HAVE BEEN SUED FOR DIRECT INFRINGEMENT, THEY ARE INCORRECT.

DATATERN HAS ACCUSED CUSTOMERS USING APPELLEE'S SOFTWARE PACKAGES OF INFRINGING THE ASSERTED METHOD CLAIMS, BUT THERE ARE NO ARGUMENTS THAT THERE'S A CASE FOR CONTROVERSY BETWEEN DATATERN AND APPELLEES ON DIRECT INFRINGEMENT.

AND THAT ISSUE OF AMAZON'S CLAIM THAT WELL, SINCE WE ARE INDEMNIFYING, THAT TAKES CARE OF IT ALL, AND WE HAVE STANDING TO BE HERE, I BELIEVE -- AND ONCE YOUR HONOR DEALS WITH THE 12(B) MOTION TO DISMISS --

THE COURT: OKAY. SO MAYBE YOU JUST ANSWERED THE QUESTION THAT WAS IN MY MIND AS YOU WERE SPEAKING. WHERE DID YOU BRIEF THAT?

MR. SHERMAN: EXACTLY. YOUR HONOR, THAT'S NOT SET

FOR HEARING UNTIL --

THE COURT: OKAY. SO I DON'T WANT TO HEAR ABOUT DATATERN TODAY.

MR. SHERMAN: BUT I BELIEVE IT'S --

THE COURT: YOU HAD THE OPPORTUNITY TO BRIEF THAT. I'M NOT GOING TO --

MR. SHERMAN: YOUR HONOR, WE REFERENCED THAT IN OUR PAPERS AND I --

THE COURT: OKAY. INCORPORATION BY REFERENCE IS A PHRASE THAT'S WASTED. I DON'T LOOK AT OTHER PAPERS.

MR. SHERMAN: I DID NOT SAY IT WAS AN INCORPORATION BY REFERENCE, YOUR HONOR.

THE COURT: I DON'T SEE A CITATION TO DATATERN.

WELL, IN YOUR OPPOSITION TO THE MOTION TO STAY, THERE'S NO TABLE BECAUSE IT'S NOT LONG ENOUGH, AND IN YOUR OPPOSITION TO THE PRELIMINARY INJUNCTION, YOU DIDN'T ADDRESS THAT ISSUE.

MR. HADDEN, AM I MISSING SOMETHING?

MR. HADDEN: NO. YOU ARE NOT, YOUR HONOR.

MR. SHERMAN: I DO REFERENCE IT.

THE COURT: WHERE?

MR. SHERMAN: I REFERENCE IT IN OUR OPPOSITION ON PAGE 3 AT LINE 19.

THE COURT: WHICH BRIEF ARE YOU LOOKING AT?

MR. SHERMAN: I'M LOOKING AT DOCUMENT 37, THE OPPOSITION TO PLAINTIFF'S CORRECTED MOTION TO ENJOIN DEFENDANTS

FROM LITIGATING --

THE COURT: AND WHICH PAGE ARE YOU ON?

MR. SHERMAN: YOUR HONOR, I AM ON PAGE 3, LINE 19, THROUGH PAGE 4, LINE 5.

THE COURT: OKAY. THERE IT IS.

MR. HADDEN: I COULD RESPOND TO DATATERN IF YOU WOULD LIKE, YOUR HONOR.

MR. SHERMAN RAISED THIS DATATERN ISSUE AFTER WE FILED OUR COMPLAINT. AND WE FILED AN AMENDED COMPLAINT EXPLICITLY ADDRESSING HIS CLAIM THAT THERE WAS NO JURISDICTION UNDER DATATERN.

FIRST, WE DISAGREE WITH THAT. IN DATATERN, THERE WAS DJ ACTION FILED BY MICROSOFT WITH RESPECT TO SOME PATENTS, AND I THINK THE OTHER ONE WAS BY SAP.

AND THE FEDERAL CIRCUIT FOUND THAT FOR ALL BUT I THINK ONE MICROSOFT CLAIM, THERE WAS JURISDICTION, BECAUSE THE INFRINGEMENT CONTENTIONS EXPLICITLY CITED THE DOCUMENTS OF THE SUPPLIER COMPANY, SAP OR MICROSOFT.

SO THAT, ALONE, WAS ENOUGH TO CREATE THE CASE OF CONTROVERSY IMPLICITLY BETWEEN MICROSOFT AND THE PATENT.

THE COURT: AND SO IN THIS CASE, THE COMPLAINT ALLEGES S3 HAS A SIGNIFICANT --

MR. HADDEN: ALL OVER THE PLACE. AND IF I GET TO MY PRESENTATION, YOUR HONOR, I WILL EXPLAIN THAT TO THE COURT IN DETAIL.

THE OTHER POINT IN DATATERN IS THERE WAS AN INDEPENDENT BASIS THAT THE COURT SAID EITHER THERE IS THIS KIND OF IMPLICIT ALLEGATION AGAINST THE TECHNOLOGY SUPPLIER, OR IF THE TECHNOLOGY SUPPLIER HAS AN INDEMNITY OBLIGATION, THAT, ALONE, CREATES STANDING.

SO WE HAVE AN INDEMNITY OBLIGATION.

THE COURT: SO THAT WOULD OPEN THE DOOR FOR YOU TO INTERVENE AS AN ALTERNATIVE.

MR. HADDEN: AS AN ALTERNATIVE.

BUT YOU DON'T HAVE TO INTERVENE IN 50 CASES, AND IT DOESN'T MAKE A LOT OF SENSE. SO WE AMENDED OUR COMPLAINT TO EXPLICITLY PLEAD OUR INDEMNITY OBLIGATION AND AGREEMENT.

I WOULD LIKE TO THINK THAT I'M HERE ON BEHALF OF ALL THESE CUSTOMERS BECAUSE THE UNIVERSE CHOSE ME, BUT IN FACT, WE ARE HERE BECAUSE AMAZON IS HERE.

THE COURT: MR. SHERMAN, I'M NOT GOING TO LET YOU CONTINUE, I THINK THAT'S PROBABLY NOT GOING TO BE A SUCCESSFUL ARGUMENT. I WILL LOOK AT IT.

MR. SHERMAN: THE REASON WHY I BELIEVE IT'S A SUCCESSFUL ARGUMENT, AND I DO NOT WISH TO RUN AFOUL OF EITHER COURT PROCEDURE OR JUST GOOD COMMON SENSE, WE DID A LOT MORE THAN INCORPORATE DATATERN BY REFERENCE IN OUR OPPOSITION PAPERS.

THE COURT: NO, NO, IT WAS THERE, AND I APOLOGIZE THAT I MISSED IT.

YOU KNOW, I WOULDN'T -- IT'S NOT FULLY DEVELOPED. I WILL LOOK AT IT, I WILL CERTAINLY LOOK AT IT.

MR. SHERMAN: THAT WAS MY POINT, YOUR HONOR.

THERE IS AN ORDER HERE, AND I DON'T CLAIM TO -- YOUR HONOR IS THE SUPREME AUTHORITY IN THIS COURTROOM ON THE ORDER, BUT THERE IS A CART BEFORE HORSE ELEMENT TO THIS.

WE HAVE DISCUSSED IN GENERAL TERMS, WILLINGNESS TO STAND DOWN UNTIL CERTAIN PREDICATE ACTIONS OCCUR, SUCH AS AN MDL. MR. HADDEN SAID, WELL, IT WOULD HAVE BEEN INEFFICIENT TO INTERVENE IN 50 ACTIONS. YEAH, BUT YOU KNOW WHAT, IF THEY ARE ALL IN ONE COURTROOM, NOT QUITE AS BIG A DEAL, I WOULD SAY RESPECTFULLY TO THE COURT AND TO MR. HADDEN.

BUT ALSO, ALSO, GIVEN THAT THIS COURT'S AUTHORITY IS BOUNDED BY, IS THIS A CASE OR CONTROVERSY, AND YOUR HONOR HAS INDICATED A DESIRE TO THINK ABOUT THIS A LITTLE BIT MORE.

THE COURT: SURE.

MR. SHERMAN: I STARTED OUT BY SAYING WE FILED A 12(B)(1) MOTION TO DISMISS, IT IS SET FOR HEARING ON JUNE 14TH, WE ARE HAPPY TO PROCEED IN A CONSENSUAL MANNER IN STAYING THINGS HERE ON THE INDIVIDUAL CASES.

OF COURSE WE WOULD LIKE THE MDL PROCEEDING TO GET GOING. BUT I THINK THAT THERE IS A, I WILL SAY IT AGAIN, A CART BEFORE HORSE ELEMENT TO THIS, AMAZON CAN PLACE ITSELF IN WHATEVER ARMOR IT WISHES AS THE PROTECTOR OF A CUSTOMER.

BY THE WAY, YOU NEED TO BE NOT ONLY A CUSTOMER, YOU NEED

TO BE A RESELLER.

THE COURT: WELL, YOU KNOW, I'M NOT GOING TO, I DON'T THINK IT'S QUITE THAT NARROW.

HERE'S THE REASON THAT I FOUND YOUR -- WE WILL GET INTO MORE OF THE TECHNICAL ISSUES, THE COMPLAINT IS PLED AT A VERY HIGH LEVEL. BUT THEN I DID LOOK AT YOUR EXPERT'S DECLARATION, AND I STILL DON'T UNDERSTAND, OR YOU HAVE NOT EXPLAINED, I SHOULD SAY, AND THERE WILL BE PLENTY OF ROOM FOR ME NOT TO UNDERSTAND, BUT I DON'T THINK YOU'VE EXPLAINED HOW AND WHAT ROLE RUBY ON RAILS ACTUALLY PLAYS.

AND YOUR INFRINGEMENT CONTENTIONS WHICH OF COURSE AREN'T DUE YET, THAT'S THE ACID TEST FOR YOU.

SO IT MAY BE THAT I NEED TO PARCEL OUT LIMITED STAYS TO GET TO SOME TIME POINTS.

SO IT MAY BE, MR. HADDEN, IF THERE'S AN AGREEMENT TO STAY ALL OF THE CASES BEFORE ME UNTIL I DECIDE THE MOTIONS TO DISMISS ON CASE OR CONTROVERSY, AT LEAST UNTIL THAT TIME YOU GET EXACTLY WHAT YOU WANT. AND THEN I WILL HAVE IT FULLY BRIEFED.

HAVE YOU BRIEFED THE MOTION TO DISMISS?

MR. HADDEN: I THINK SO. YES.

THE COURT: IT'S ALL BRIEFED. OKAY. SO YOU'VE HAD A CHANCE TO ADDRESS THE CASE FOR CONTROVERSY.

MR. HADDEN: YES.

THE COURT: EXCELLENT. AND I HAVE NOT HAD A CHANCE

TO REALLY STUDY THAT.

SO -- AND BY THE TIME YOU COME BACK, I WILL KNOW FROM THE COMMITTEE WHETHER ALL THE CASES WILL BE MINE, WHICH IS AN ADDED BENEFIT.

AND YOU INDICATE THAT THE OTHER JUDGES HAVE STAYED THE CASES PENDING THE MDL DETERMINATION.

MR. SHERMAN: YES.

THE COURT: SO IN FACT, AMAZON AND ALL THE DEFENDANTS, UNTIL MAY 31ST, HAVE THE RELIEF YOU ARE SEEKING.

MR. HADDEN: THAT'S TRUE, YOUR HONOR.

THE COURT: GOOD.

MR. HADDEN: IF I COULD JUST ADDRESS THE MDL POINT JUST BRIEFLY. MDL IS NOT THE TOOL TO SOLVE THIS PROBLEM.

THE COURT: NO, IT'S NOT.

MR. HADDEN: RIGHT. BECAUSE AT THE END OF THE MDL, ALL THE CASES GO BACK TO THEIR HOME COURTS FOR 50 DIFFERENT TRIALS.

THE COURT: YEP.

MR. HADDEN: AND THAT'S WHY THE FEDERAL CIRCUIT IN ROCKSTAR, GOOGLE AND NINTENDO SAID NO. THE SOLUTION HERE IS CUSTOMER GETS STAYED, ONE CASE GOES FORWARD.

THE COURT: YEAH.

SO AS I SAID, I'M NOT PREPARED TO RULE ON THE CASE OR CONTROVERSY ISSUE, SO I'M JUST GOING TO COMMENT THAT IF I FIND THAT AMAZON CAN BRING ITS SUIT, I WOULD, I WOULD BE INCLINED TO

10:23:55 GRANT THE PRELIMINARY INJUNCTION.

10:23:57 I THINK THAT THIS IS A CUSTOMER SUIT. I DO THINK THAT -- 10:24:02 I MEAN, I AGREE WITH YOUR REPLY STATEMENT, MR. HADDEN, THAT I 10:24:05 ACTUALLY THINK THAT YOUR DECLARATORY RELIEF ACTION CAN RESOLVE 10:24:09 THE ENTIRE CASE BECAUSE YOU ALSO ALLEGE OR SEEK DECLARATORY 10:24:16 RELIEF ON THE TOOL KIT.

10:24:17 MR. HADDEN: IN ADDITION, YOUR HONOR, THIS CASE 10:24:19 SHOULD BE BARRED, RIGHT. WE HAVE LITIGATED THIS EXACT ISSUE.

10:24:22 THE COURT: WELL, AND I DON'T NEED TO DECIDE THAT 10:24:24 EITHER. I DON'T KNOW WHETHER THEY SHOULD BE BARRED OR NOT. 10:24:28 I'M ACTUALLY TRYING TO STAY WITH THE CUSTOMER USE ISSUE.

10:24:34 AND I DON'T AGREE THAT -- AND YOU CITED THE KAHN CASE, I 10:24:39 THINK.

10:24:39 MR. SHERMAN: YES, WE DID.

10:24:40 THE COURT: I THINK KAHN HAS BEEN LEFT BEHIND IN THE 10:24:44 DUST. AND I THINK KATZ STARTED THAT, AND I REALLY -- IT SAYS 10:24:48 WHAT YOU SAY, AS YOU REPRESENT IT, BUT I JUST THINK IT HAS BEEN 10:24:53 SUPERSEDED BY FRESH THINKING ON THE BENEFIT OF THIS RULE.

10:24:58 MR. SHERMAN: YOUR HONOR, I SENSE THAT THE COURT IS 10:25:04 EXTREMELY COMFORTABLE RIGHT NOW THAT, GIVEN A VOLUNTARY STAY OF 10:25:10 PROCEEDINGS IN THE TRIAL COURT, THAT JUNE 14TH WILL COME, WE 10:25:15 WILL SEE WHAT WILL HAPPEN WITH THE MDL, BECAUSE YOU ARE NOT 10:25:19 STAYING OR GOING TO THE MDL PANEL IN CHICAGO, I TAKE IT.

10:25:23 THE COURT: I'M NOT GOING. JUDGES DON'T GO TO THINGS 10:25:27 LIKE THAT.

MR. SHERMAN: YOU ARE NOT STAYING MY PARTICIPATING --

THE COURT: NO, NO, NOT AT ALL.

SO IN FACT, I GUESS IT WOULD ONLY BE A DISCOVERY -- I'M NOT SURE -- I WOULD ONLY STAY, MAYBE DISCOVERY, BECAUSE I DON'T KNOW WHAT ELSE --

MR. HADDEN: NOTHING IS GOING ON, BUT I DO THINK IT'S IMPORTANT FOR THE MDL PANEL TO KNOW IF -- THAT THIS COURT IS CONSIDERING GRANTING THE PI INJUNCTION.

THE COURT: SO -- BUT, WELL, MR. SHERMAN, IF THE OTHER COURTS HAVE STAYED THEIR ACTIONS, THEY DIDN'T PROHIBIT THE MDL FROM GOING FOR FORWARD EITHER. SO IS THERE MAGIC LANGUAGE?

MR. SHERMAN: I HAVE NOT BEEN BEFORE A JUDGE LIVE YET IN ANY OF THESE CASES WHERE THIS ISSUE WAS IN THIS DETAIL.

THE COURT: WELL, FOR BETTER OR FOR WORSE, I ALWAYS HAVE YOU COME IN FOR YOUR MOTIONS HERE.

MR. SHERMAN: IT'S ALWAYS A PLEASURE TO SEE YOU, YOUR HONOR.

THERE'S JUST A COUPLE OF POINTS THAT ARE SORT OF OUT THERE NOW. THE FIRST IS THE MDL, WHICH WE INTEND TO PROCEED.

OBVIOUSLY, IF COUNSEL WERE TO REPRESENT, I'M SURE HE WOULDN'T, BUT IF THE COURT IS GOING TO GRANT THE PI THAT YOUR HONOR HAS ALREADY INDICATED, FOR EXAMPLE, THAT YOU HAVEN'T EVEN GOTTEN INTO THE ISSUE OF THE PRIOR AMAZON ACTION, SO I'M SURE COUNSEL WOULDN'T GO THAT FAR.

BUT YOU'VE SUGGESTED ON SEVERAL OCCASIONS THIS MORNING, READING THE COMPLAINT, READING THE COMPLAINT, READING THE COMPLAINT, AND INTERESTINGLY, I'M TOLD BY MY VERY, VERY EXPERIENCED PATENT COUNSEL, MR. SETH, MR. MONROE, AND MR. MACEIKO, THAT WE WENT FAR, FAR, FAR BEYOND THE TWOMBLY IQBAL REQUIREMENTS. THAT'S WHAT THEY TOLD ME, FOR BETTER OR FOR WORSE.

THE COURT: I THINK THE COMPLAINT IS FINE. I DIDN'T HAVE ANY PROBLEM WITH IT. I AGREE WITH YOU.

MR. SHERMAN: I HAVE A PROBLEM WITH IT, YOUR HONOR. WE WILL BE AMENDING THE COMPLAINT.

AND I'VE INDICATED THAT TO THE MDL PANEL, THAT WAS IN OUR REPLY. I EXPECT THAT THE AMENDMENT TO THE COMPLAINT WILL BE READY IN APPROXIMATELY TWO WEEK'S TIME. BUT THAT WAS AN FYI.

THE COURT: OKAY. THAT'S FINE, SURE.

MR. SHERMAN: BUT ALSO, YOUR HONOR, SINCE WE ARE ON THE SUBJECT OF STAY, BY THE WAY, IN EARLY FEBRUARY, THE PTAB ISSUED AN ORDER ON ONE OF THE PATENTS THAT IS THE SUBJECT OF THIS LITIGATION, THE '310 PATENT. THIS WAS IN THE CASE OF PERSONAL WEB AND APPLE COMPUTER. AND THIS INTER PARTES REVIEW RESULTED IN A PTAB DECISION INVALIDATING THE '310 PATENT.

THIS WAS THE SAME PANEL THAT WAS REVERSED BY THE FEDERAL CIRCUIT.

THE COURT: I MEAN, I GET REVERSED, AND I DON'T THINK ANYONE THINKS I'M WRONG FOREVER MORE.

MR. SHERMAN: YOUR HONOR, YOU ARE NOT GOING TO FIND ANY DISAGREEMENT. THIS IS MORE OF AN FYI, THIS WAS NOT IN OUR PAPERS, THIS WAS NOT IN COUNSEL'S PAPERS, THIS IS A RECENT DEVELOPMENT, THERE HAS BEEN AN ORDER BY THE PTAB, IT IS BEING APPEALED TO THE FEDERAL CIRCUIT.

THE COURT: OKAY. SO NO ONE HAS ASKED ME TO STAY THE CASES BECAUSE OF IPR PROCEEDINGS.

MR. HADDEN: NO, YOUR HONOR.

MR. SHERMAN: EXACTLY.

THE COURT: THAT'S FINE. I JUST WANTED TO SAY THAT.

MR. SHERMAN: I JUST WANTED TRANSPARENCY.

THE COURT: LET ME JUST SAY, MR. SHERMAN, IF YOU WANT TO AMEND THE COMPLAINT, THAT'S FINE. AND IF IT'S OPPOSED OR STIPULATED OR WHATEVER, IT COULD CAUSE ME TO TERMINATE ALL PENDING MOTIONS, BECAUSE THEY DON'T RELATE TO THE OPERATIVE PLEADING.

MR. SHERMAN: WELL --

THE COURT: SO PLEASE UNDERSTAND THAT, WHICH COULD CAUSE YOU TO LOSE THE JUNE 14TH DATE.

MR. SHERMAN: I --

THE COURT: I SAY THIS BECAUSE I DON'T WANT YOU TO BE UNAWARE OF POTENTIAL CONSEQUENCES.

MR. SHERMAN: THOSE ARE NOT CONSEQUENCES THAT WOULD NECESSARILY CAUSE ME TO STAY UP AT NIGHT. I MEAN, THEY ARE CONSEQUENCES, BUT THIS IS WHAT HAPPENS IN THE CONDUCT OF

LITIGATION.

THE COURT: OKAY.

MR. SHERMAN: THE POINT IS THAT WE'VE SPENT, MY CLIENT HAS INVESTED CONSIDERABLE RESOURCES STUDYING THIS, THE COMPLEXITIES OF THE HDT PROTOCOL. AND THESE PATENTS PREDATE THE MODERN DAY INTERNET AS WE KNOW IT.

SO THE POINT IS --

THE COURT: THAT'S WHY THEY ARE EXPIRED.

MR. SHERMAN: IF EVERYTHING STAYS ON TRACK AND NOTHING IS TAKEN OFF CALENDAR, YOUR HONOR, I WOULD LIKE THE OPPORTUNITY, IF YOU WOULD LIKE, I WILL MAKE A MOTION, I WILL MEET AND CONFER WITH MR. HADDEN, YOU KNOW, THE DECLARATION OF MR. SHENOY WAS FILED IN THE REPLY PAPERS, AND THEY COULD HAVE FILED IT IN THEIR MOVING PAPERS.

THE COURT: I KNOW.

MR. SHERMAN: AND I'M NOT CAPABLE STANDING HERE --

THE COURT: SURE.

MR. SHERMAN: -- OF REFUTING THAT IN ANY --

THE COURT: WELL, AND I AM VERY SYMPATHETIC TO THAT POSITION YOU WERE PUT IN TO HAVE THIS LENGTHY REPORT. BUT, YOU KNOW, I AM REALLY LOOKING AT, YOU DIDN'T HEAR ME MENTION THAT AS A BASIS FOR MY TENTATIVE LEANING TO GRANT THE MOTION. I WAS BASING IT ON YOUR COMPLAINT AND YOUR EXPERT.

SO, YOU KNOW, I REALLY UNDERSTAND GETTING HIT WITH A 200-PAGE SUPPLEMENT IN THE REPLY BRIEF IS VERY DIFFICULT. BUT

10:31:06 I -- I WOULD, OF COURSE, RATHER SEE A MOTION FOR PRELIMINARY INJUNCTION AFTER THE INFRINGEMENT CONTENTIONS ARE FILED, BUT I'M NOT GOING TO HAVE THAT LUXURY.

AND THAT'S WHY I SUGGESTED THAT EVEN IF I WERE TO GRANT, EITHER FORM OF RELIEF, THAT I WOULD MAKE IT CLEAR THAT YOU COULD SEEK MODIFICATION OF AN INJUNCTION OR LIFTING OF A STAY UPON FILING OF INFRINGEMENT CONTENTIONS THAT DO THE MAPPING THAT WOULD BE REQUIRED THERE.

AND I THINK -- BECAUSE BOTH A STAY AND AN INJUNCTION HAVE TO BE NARROWLY TAILORED IN A SHORTENED TIME AS POSSIBLE TO PROTECT THE INTEREST OF THE PARTIES.

AND SO WITH THIS COMPLAINT, WHICH I FIND TO BE, IT'S FINE, IT'S COMPLETELY ADEQUATE, BUT --

MR. SHERMAN: THANK YOU.

THE COURT: BUT IT ISN'T ADEQUATE FOR THIS MOTION. HENCE, DR. RUSS'S SUPPLEMENTAL, AND HE DIDN'T SAY WHAT I WOULD HAVE EXPECTED HOPED HIM TO SAY.

AND SO I SAT BACK FROM THAT AND I -- IN WHAT I COULD SEE AT THIS POINT, IT MAY BE THAT DR. RUSS IS UNABLE TO MAP THE PRODUCTS ON TO THESE CLAIMS UNTIL YOU HAVE SOME DISCOVERY. AND I APPRECIATE THAT.

MR. SHERMAN: AND THAT'S OUR POSITION AS WELL, YOUR HONOR.

THE COURT: SURE. AND I'M NOT GOING TO LET YOU HAVE THAT RIGHT NOW. BUT --

MR. SHERMAN: I'M SORRY, DID YOU SAY YOU ARE NOT GOING TO LET US?

THE COURT: THERE IS GOING TO BE A STAY, THERE WON'T BE ANY DISCOVERY, CORRECT?

MR. SHERMAN: WHAT I WAS SAYING, YOUR HONOR, IS WE ARE PREPARING WITHOUT THE BENEFIT OF ANY DISCOVERY, TO PROPOSE OUR AMENDED COMPLAINT.

THE COURT: THAT'S FINE.

MR. SHERMAN: OKAY.

THE COURT: THAT, YOU CAN DO.

ALL RIGHT. SO HERE'S WHAT I THINK I'M GOING TO DO TODAY, WE'VE GOT, BECAUSE SO MANY BALLS ARE IN THE AIR, AND MR. SHERMAN IS ABSOLUTELY CORRECT THAT I HAVE TO BE CERTAIN OF SUBJECT MATTER JURISDICTION, SO IF THE AMAZON CASE CAN'T PROCEED, THEN THERE'S A WHOLE DIFFERENT SITUATION, PERHAPS INTERVENTION WILL HAVE TO BE CONSIDERED AT THAT POINT, BUT BASED UPON THE AGREEMENT OF THE PARTIES, I AM GOING TO STAY THIS CASE WITH THE EXCEPTION OF MDL ACTIVITY UNTIL JUNE 14TH WHEN YOU RETURN TO COURT ON THE PREVIOUSLY FILED MOTION TO DISMISS.

IN THE EVENT THAT AN AMENDED PLEADING IS FILED, THEN I WILL HAVE TO LOOK AT IT. BUT I MAY TERMINATE WITHOUT PREJUDICE, THE PENDING MOTIONS AND CONTINUE THE STAY UNTIL THERE HAS BEEN -- WELL, I GUESS THERE WILL BE A FURTHER MOTION -- I MEAN, THE MOTION TO DISMISS IS FILED BY THE

DEFENDANTS, YOU'RE OPPOSING THE MOTION BASED ON NO CASE OR CONTROVERSY.

NO, I GUESS UNDER DEC RELIEF, IT'S YOUR MOTION. I'M SORRY, I'M GETTING CONFUSED.

IN THE AMAZON CASE, DO YOU WANT TO AMEND?

MR. SHERMAN: NO, WE WISH TO AMEND --

THE COURT: SO THEN THE AMAZON --

MR. HADDEN: THEY WANT TO FILE 55 NEW CUSTOMER SUITS.

THE COURT: SO THEN THE AMAZON CASE MIGHT HAVE TO BE AMENDED.

MR. HADDEN: YOUR HONOR, AT SOME POINT, THEY FILED 50 COMPLAINTS. WE BROUGHT OUR PI MOTION BASED ON THOSE COMPLAINTS. AND AS YOUR HONOR RECOGNIZED, THE COMPLAINTS AS PLED, THEIR THEORY MAPS TO AMAZON.

NOW IF THEY ARE GOING TO CONCOCT SOME NEW COMPLAINT, I DON'T KNOW WHERE THAT LEADS US, THEY CAN'T JUST TRYING TO PLEAD THE THEIR WAY OUT OF THE FACT THEY ARE ACCUSING AMAZON.

THE COURT: WELL, I DON'T WANT TO MAKE THIS MORE DIFFICULT. I WANTED TO GIVE MR. SHERMAN THE OPPORTUNITY.

MR. HADDEN: I UNDERSTAND, YOUR HONOR.

THE COURT: SO -- AND I GOT BALLED UP IN THIS. SO THE MOTION TO DISMISS IS YOUR MOTION --

MR. HADDEN: NO, THEIR MOTION.

THE COURT: YOUR MOTION TO DISMISS THE DECLARATORY RELIEF BASED ON NO CASE OR CONTROVERSY. OKAY.

10:35:03 AND THAT'S SET FOR JUNE 14TH. AND NO AMENDMENT IS GOING TO BE FILED THERE. THAT'S GOING TO GO FORWARD. OKAY. GOOD.

10:35:10 I'M GOING TO STAY THIS ACTION UNTIL JUNE 14TH WITH THE EXCEPTION OF THE MDL ACTIVITY, OF COURSE.

10:35:19 MR. SHERMAN: AND IF WE CHOOSE TO FILE AN AMENDED --

10:35:23 MR. HADDEN: WELL, NO, IF IT IS STAYED, THEY SHOULDN'T BE FILING THE AMENDED COMPLAINT.

10:35:30 THE COURT: SO THEN YOU CAN'T AMEND.

10:35:31 MR. SHERMAN: I WILL SEND COUNSEL THE PROPOSED AMENDED -- I DON'T REALLY UNDERSTAND HIS POINT.

10:35:35 I DON'T THINK THAT COUNSEL IS SUGGESTING THAT BY ANY CONSTRUCTION OF THE FEDERAL RULES OF CIVIL PROCEDURE, THAT WE ARE COMPLETELY DENIED ANY OPPORTUNITY EARLY IN THE CASE BEFORE THERE'S BEEN ANY PROCEEDINGS TO SEEK TO AMEND OUR OWN COMPLAINTS.

10:35:50 THE COURT: YOU PROBABLY HAVE TO FILE A MOTION BECAUSE IT'S MORE THAN --

10:35:54 MR. HADDEN: YEAH.

10:35:54 MR. SHERMAN: THERE'S BEEN NO RESPONSIVE PLEADING FILED.

10:35:57 THE COURT: YOU HAVEN'T FILED A MOTION TO DISMISS THE INDIVIDUAL CASES.

10:36:01 MR. HADDEN: NO. WE'VE ANSWERED.

10:36:04 THE COURT: SO I THINK YOU MIGHT BE ABLE TO -- OKAY.

10:36:16 SORRY. THIS PUZZLE IS GETTING TO ME WITH THE TWO CASES. IF I

STAY ALL OF THE INDIVIDUAL CASES, THEN YOU CAN'T FILE A MOTION TO AMEND.

MR. SHERMAN: I CAN SEND HIM A PROPOSED MOTION.

THE COURT: YOU COULD SEND --

MR. HADDEN: HE COULD SEND ME WHATEVER HE WANTS.

MR. SHERMAN: I'M JUST TRYING TO BE PRACTICAL ABOUT THIS, AND THE FACT IS THAT EVERY ONE OF THE INDIVIDUAL CASES, BY AGREEMENT BETWEEN COUNSEL, WE HAVE BEEN QUITE COOPERATIVE UP THROUGH NOW.

THE COURT: GOOD.

MR. SHERMAN: FOLKS HAVE SAID, HEY, CAN WE HAVE AN EXTENSION, SURE, WE GOT MDL COMING UP.

THE COURT: SURE.

MR. SHERMAN: NOW ALL THE SUDDEN I'M HEARING SOMETHING ELSE. WE'VE ANSWERED NO, THEY HAVEN'T ANSWERED. MAYBE I WILL GET ANSWERS ON MONDAY TO ALL 55.

ALL I'M SUGGESTING IS THAT YES, THIS IS COMPLICATED, BUT I DON'T BELIEVE THAT THAT SUSPENDS THE OPERATION OF THE NORMAL RULES OF AMENDMENT BECAUSE WE INVESTED A LOT BEFORE WE FILED AND WE ARE INVESTING A LOT --

THE COURT: SO NOW YOU ARE SAYING YOU ARE NOT AGREEING TO A STAY UNTIL JUNE 14TH?

MR. SHERMAN: YOUR HONOR, I AM AGREEABLE TO A STAY.

THE COURT: BUT THEN YOU CAN'T FILE YOUR AMENDMENT.

MR. SHERMAN: OKAY. SO I WILL SEND COUNSEL BY

PROPOSED AMENDED COMPLAINT.

THE COURT: OKAY.

MR. SHERMAN: AND I WILL INDICATE TO THE MDL PANEL THAT WE HAVE A PROPOSED -- I ALREADY HAD INDICATED TO THE MDL PANEL THAT. I AM TRULY SEARCHING FOR SOMETHING THAT IS PRACTICAL AND EFFICIENT.

THE COURT: ALL RIGHT.

MR. SHERMAN: RECOGNIZING THAT --

THE COURT: THANK YOU.

MR. SHERMAN: -- THIS IS COMPLICATED.

THE COURT: SO THIS IS COMPLICATED.

AND PUTTING ASIDE THE MDL, IF I HAVE MERELY 30 CASES, I DON'T THINK I WOULD ACT VERY DIFFERENTLY THAN IF I HAVE 56.

BUT WE WILL NEED TO DISCUSS EITHER PROCEEDING ALONG THE LINES OF THE AMAZON CASE, THAT'S WHAT MR. HADDEN HAS SUGGESTED, OR LETTING YOU LITIGATE YOUR BEST CASE.

MR. SHERMAN: THAT'S FINE.

THE COURT: I MEAN, AS ONE -- AND STAYING ALL THE REST, AND SEEING HOW THE BEST CASE COMES OUT. AND IF YOU LOSE THE BEST CASE, THEN I -- YOU KNOW, I THINK EVEN A FAIRLY MIDDLING MEDIATOR CAN TAKE CARE OF THE REST OF THE CASES. BECAUSE IF I NEEDED TO SCHEDULE 30 TRIALS, I WANT YOU TO KNOW THAT MY NEXT AVAILABLE TRIAL DATE IS IN FEBRUARY OF 2022.

MR. SHERMAN: OH, I WAS CLOSE.

THE COURT: SO IF I WERE TO DO BACK-TO-BACK PATENT

10:38:36 TRIALS, IT WOULD TAKE ME TO MY RETIREMENT.

10:38:39 SO THAT'S WHY I SAY WE ARE PROBABLY GOING TO PICK, AND I
10:38:43 WILL LET YOU PICK IT, I MEAN, YOU WILL HAVE HAD -- I WILL GIVE
10:38:46 YOU AMPLE OPPORTUNITY.

10:38:48 MR. SHERMAN: THAT'S FINE.

10:38:48 THE COURT: AND THEN TO -- BUT WE WILL TALK ABOUT
10:38:51 THAT. I HAVE TO MANAGE 30 CASES, UNLESS THE MDL PANEL DECIDES
10:38:54 TO SEND THEM TO NEW YORK OR SOMEWHERE ELSE AND SOME OTHER OF MY
10:38:57 COLLEAGUES WILL COME UP WITH A BETTER WAY OF HANDLING THEM.

10:39:01 MR. SHERMAN: I WOULD SAY A FAIR TO MIDDLING TRIAL
10:39:04 LAWYER, IF HE OR SHE THEY LOST THAT FIRST CASE, MIGHT FIGURE
10:39:06 OUT WHAT TO DO.

10:39:07 THE COURT: YOU KNOW, JUDGE ALSUP INSTITUTED HIS
10:39:09 SHOOTOUT LAST YEAR WITH CLAIMS WHERE EACH SIDE PICKED ITS BEST
10:39:13 CASE AND HE HAD A TRIAL ON THOSE. OF COURSE HIS SHOOTOUT WAS
10:39:18 THE HOCKEY KIND, I THOUGHT IT WAS A DUEL OF 50 PACES, BUT IT
10:39:23 TURNED OUT TO BE MORE LIKE THE DUEL THAN THE HOCKEY SHOOTOUT.

10:39:27 ALL RIGHT. I THINK WE HAVE A PLAN RIGHT NOW. I WILL
10:39:29 ANTICIPATE SEEING YOU AGAIN ON JUNE 14TH. I WILL, BY AGREEMENT
10:39:34 OF THE PARTIES, STAY THE INDIVIDUAL CASES UNTIL THAT DAY, WITH
10:39:38 THE EXCEPTION OF ANY ACTIVITY ON THE MDL ACTION.

10:39:42 I WILL, AND I'M STAYING IT FOR THE PURPOSE OF RESOLVING
10:39:48 THE COURT'S JURISDICTION FIRST, WHICH I AM COMPELLED TO DO.
10:39:52 AND THAT ISSUE IS BRIEFED IN THE PENDING MOTION TO DISMISS.

10:39:54 SO I THINK THAT IS THE PROPER THING TO DO. I THINK

MR. HADDEN, YOUR CLIENTS ARE ADEQUATELY PROTECTED.

ON JUNE 14TH, IT WOULD CERTAINLY BE MY HOPE THAT I CAN GIVE YOU AN ORAL RULING, AND SO THEN I CAN DECIDE ON WHAT HAPPENS WITH THE STAY BEYOND THAT. AND THEN I MAY BE PREPARED TO GIVE YOU A FURTHER RULING FROM THE BENCH TO BE FOLLOWED UP WITH THE WRITTEN ON THE PRELIMINARY INJUNCTION AND THE MOTION TO STAY.

I WILL HAVE THE BENEFIT OF THE MDL PANEL'S DETERMINATION, USUALLY, I HEAR FROM THEM WITHIN A WEEK OF THE HEARING.

MR. SHERMAN: WOULD YOUR HONOR CARE TO SEE A CHAMBERS COPY OF A NON-FILED, TO-BE-FILED AMENDED COMPLAINT?

THE COURT: I THINK THAT WHAT I'M GOING TO DO THERE, BECAUSE THERE'S A STAY, IS THAT GO AHEAD AND SEND THE INFORMAL COPY TO MR. HADDEN, AND IF THE TWO OF YOU AGREE THAT IT WOULD BE OF BENEFIT TO ME, YOU CAN SEND IT TO ME JOINTLY.

BUT I'M NOT GOING TO -- BECAUSE OTHERWISE I DON'T WANT IT TO LOOK LIKE, MR. HADDEN, WHAT I GIVE WITH ONE HAND, I TAKE BACK WITH THE OTHER.

MR. HADDEN: UNDERSTOOD, YOUR HONOR.

ON THE PI MOTION ITSELF, ARE WE GOING TO HAVE AN ARGUMENT ON THAT ON JUNE 14TH OR --

THE COURT: SO I WON'T HAVE TIME ON JUNE 14TH.

LET'S NOW, WE HAVE --

MR. HADDEN: I'M HAPPY TO ARGUE IT NOW.

THE COURT: AND I THINK YOU ARE PREPARED FOR IT NOW.

SO LET ME, YOU KNOW, I GUESS MR. HADDEN, I WANT TO HEAR FROM YOU AS TO WHY THE PRELIMINARY INJUNCTION WOULD BE A BETTER OUTCOME THAN THE STAY, OTHER THAN THE OBVIOUS THAT IT WOULD AFFECT ANY FUTURE CASES AND CASES IN OTHER JURISDICTIONS.

IF THERE'S ANY OTHER BENEFIT, AND I THINK I WAS -- AND I HAVE SOME CONCERN, I WANTED TO BE SURE, AND I THINK I AM NOW THAT -- AT FIRST WHAT I THOUGHT YOU WERE ARGUING IN ALLEGING IN YOUR DEC RELIEF ACTION WAS THAT S3 DID NOT INFRINGE. AND EVEN IF THAT'S TRUE, THAT WOULDN'T BE THE ANSWER AND IT WOULDN'T NECESSARILY RESOLVE ANYTHING.

BUT THEN IN YOUR REPLY BRIEF, MAYBE THAT'S WHEN I FINALLY UNDERSTOOD IT ALL, YOU ARE ALLEGING THE TOOL KIT AS WELL, WHICH IS THE MISSING PRODUCT.

MR. HADDEN: YES. ALL OF THAT, YOUR HONOR.

AND I HAVE A TUTORIAL THAT MAY HELP EXPLAIN HOW THIS ACTUALLY WORKS IF YOUR HONOR WANTS TO SEE IT.

THE COURT: HOW LONG IS THAT PRESENTATION?

MR. HADDEN: NOT LONG, IT'S JUST A FEW SLIDES.

THE COURT: OKAY. SURE.

MR. HADDEN: AND I SEE YOUR FIRST QUESTION, THE BASIC DIFFERENCE BETWEEN STAYING THESE CASES IN THE PI IS OBVIOUSLY THE AFFECT ON OTHER JURISDICTIONS.

SO IF, YOU KNOW, DESPITE OUR OPPOSITION THE MDL GETS GRANTED, ALL THE CASES COME TO YOU, YOU HAVE THE POWER TO STAY THEM ALL. YOU HAVE, EFFECTIVELY, THE SAME RELIEF.

THE ONLY OTHER ISSUE THAT I UNDERSTAND FROM MR. SHERMAN IS THAT PERSONAL WEB WANTS TO KEEP FILING THESE SUITS. AND THAT IS A PROBLEM. AMAZON HAS, I THINK, A MILLION SIMILARLY SITUATED CUSTOMERS, AND JUST HAVING THEM GET PICKED OFF EITHER ALONE OR IN BUNCHES, IS PROBLEMATIC.

SO IF THE COURT -- YOU KNOW, THE ISSUE YOU EXPRESSED TODAY THAT THEY SHOULD BE RESOLVED IN A SINGLE CASE, EITHER AMAZON'S DECLARATORY RELIEF ACTION OR SOME GENERIC CUSTOMER SHOULD GO FORWARD AND FIGHT THAT. THERE SHOULDN'T BE NEW CASES BEING FILED. THAT THEY ARE FILED, THEY SHOULD BE STAYED IMMEDIATELY.

THE COURT: SO I UNDERSTAND WHERE WE ARE ON OPEN SOURCE.

MR. HADDEN: YEAH. CAN I JUST COMMENT ON THAT?

THIS NOTION THAT THEY NEED ADDITIONAL INVESTIGATION AND HAVE TO AMEND NOW, RUBY ON RAILS IS OPEN SOURCE. THEY COULD HAVE -- DR. ROSS COULD HAVE DONE ANYTHING HE NEEDED.

THE COURT: THEY CAN BUY IT.

MR. HADDEN: IT'S FREE. IT'S OPEN SOURCE. SO THEY COULD EXAMINE IT UP THE WAZOO AND FIND WHATEVER THEY WANT.

AND THE FACT THAT, AS YOUR HONOR NOTED, DR. RUSS COULD NOT MAP A CLAIM TO IT AFTER WHATEVER ANALYSIS HE DID, KIND OF PROVES THE POINT, WHICH IS WHY SEEING A BUNCH OF THESE COMPLAINTS FROM THESE GUYS IS NOT VERY ENCOURAGING.

MR. SHERMAN: YOUR HONOR, I DID NOT GET THE SENSE IN THE READING OF THESE PAPERS, AND I'M NOT REALLY SURE HOW THIS

WOULD WORK LEGALLY, THAT A PARTY THAT CLAIMS THAT THEIR PATENTS ARE BEING INFRINGED, IS BEING ENJOINED FROM SUING AN INFRINGER.

I MEAN, I NEED TO SEE THAT IN THEIR PAPERS. I DON'T KNOW HOW THAT COEXISTS WITH DUE PROCESS OR ANY STATUTES OF LIMITATION.

THE COURT: SO I WAS WAY MORE COMFORTABLE WITH A STAY WHERE I HAVE FAIR LATITUDE AND DISCRETION IN CONTROLLING CASES ON MY OWN DOCKET AS OPPOSED TO AN INJUNCTION. BUT I WANTED TO HEAR FROM MR. HADDEN WHAT BENEFITS HE SAW FOR PROSECUTION OF THESE CASES.

MR. SHERMAN, I THINK YOU RAISED AN IMPORTANT POINT, AND THE -- I MEAN, I DON'T KNOW THAT AN INJUNCTION COULD PREVENT YOU FROM FILING ACTIONS, IT COULD BE AN INJUNCTION THAT AFFECTS THE PROCESS OF A CASE OR PROGRESS OF A CASE ONCE ITS FILED.

AND SO THOSE WOULD BE TWO DIFFERENT THINGS THAT WE WOULD HAVE TO EXPLORE IN A LITTLE MORE DETAIL. BUT I WOULD AGREE WITH YOU, I CAN'T ENJOIN YOU FROM FILING CASES BECAUSE YOU COULD LOSE RIGHTS. AND I DIDN'T SEE THAT IN THE PAPERS.

THE COURT: AND I DON'T THINK, I'M NOT GOING TO TAKE THE TIME TO LOOK FOR THAT NOW.

SO GO AHEAD, MR. HADDEN.

MR. HADDEN: SURE. TIME TO ARGUE?

THE COURT: YEAH.

MR. HADDEN: OKAY. GREAT.

(OFF-THE-RECORD DISCUSSION.)

THE COURT: SO IS THIS SOMETHING I'M GOING TO GET ON THE VIDEO?

MR. HADDEN: YEAH, IF I COULD GET THE SCREEN ON.

MR. SHERMAN: YOUR HONOR, WHILE THIS IS OCCURRING, DOES THE COURT MIND IF I SIT AT COUNSEL TABLE?

THE COURT: ABSOLUTELY. PLEASE DO. AT A PLACE WHERE YOU CAN SEE THIS, I THINK YOU'VE GOT SCREENS THERE.

MR. HADDEN: UNFORTUNATELY, I CAN'T SEE IT. IS THERE A SCREEN I CAN WHEEL OVER? OKAY.

MR. SHERMAN: YOUR HONOR, MAY WE GET A COPY OF WHATEVER COUNSEL IS SHOWING?

MR. HADDEN: HERE IS A COPY OF ONE. AND IF I COULD HAND UP SOME SLIDES TO YOUR HONOR.

THE COURT: I APPRECIATE THAT. THANK YOU.

MR. SHERMAN: YOUR HONOR, WHILE WE ARE SETTING UP, IF I MAY.

MR. HADDEN SAYS THEY HAVE A FEW SLIDES, AND I HAD INQUIRED ABOUT THE OPPORTUNITY TO RESPOND TO DR. SHENOY'S -- I'M MAKING SURE THAT THIS IS NOTED FOR THE RECORD THAT THIS IS, LIKE, 45 PAGES.

THE COURT: I DIDN'T SEE ANYTHING FILED TO STRIKE THE REPLY DECLARATION.

MR. HADDEN: THEY ARE JUST DEMONSTRATIVES, I'M NOT SURE WHAT THE BEEF IS.

MR. SHERMAN: WE WEREN'T EVEN GIVEN THEM IN ADVANCE.

BUT REGARDLESS, I THINK THAT THIS HIGHLIGHTS THE DESIRABILITY, IF WE ARE GOING TO GET TO A FINAL DETERMINATION BY THIS COURT ON THE SUBJECT OF THE PRELIMINARY INJUNCTION MOTION, THAT WE --

THE COURT: SO MY RULING -- THE ISSUES BEFORE ME TODAY HAVE VERY LITTLE TO DO WITH THE TECHNOLOGY, IT HAS TO DO WITH THE PLEADING, NOT THE UNDERLYING TECHNOLOGY. AND SO I ASSUME THIS IS A COUPLE OF MINUTES.

MR. HADDEN: YEAH. IT'S NOT THAT LONG, YOUR HONOR. I WANTED TO EXPLAIN WHAT THEY ARE PLEADING IN THEIR COMPLAINT AND HOW THAT ACTUALLY WORKS IN S3.

THE COURT: OKAY.

MR. HADDEN: IF YOUR HONOR DOESN'T FIND IT HELPFUL, I WILL OBVIOUSLY STOP.

THE COURT: OKAY.

MR. HADDEN: SO AS YOUR HONOR NOTED, AND I WILL JUST START WITH THIS SLIDE 4 FROM THE COMPLAINT, RIGHT. THEY TALK ABOUT DEFENDANT'S UPLOAD THEIR CONTENT TO AMAZON S3, S3 THEN GENERATES THESE ETAGS, AND THEN THERE'S A LOT OF DISCUSSION IN THE COMPLAINT WITH THE USE OF THE ETAGS IN THESE CONFIDENTIAL GETS, AND THIS IF-NONE-MATCH HEADERS.

AND THAT'S REALLY THE BASIS OF ALL OF THEIR CLAIMS AND ALL OF THEIR MAPPINGS IN EVERY CLAIM OF THE COMPLAINT TO THE ACCUSED TECHNOLOGY, WHICH IS S3.

SO JUST A LITTLE EXPLANATION FOR WHAT THIS REALLY MEANS IN

THE REAL WORLD, RIGHT. SO S3, WHICH STANDS FOR SIMPLE STORAGE SOLUTION, IS NOT VERY SIMPLE, AND IT'S VERY LARGE, BUT IT IS AMAZON'S CLOUD STORAGE SERVICE. AND IT HOLDS, KIND OF, RIDICULOUS AMOUNTS OF DATA IN DATA CENTERS ALL OVER THE GLOBE, BUT IT'S SIMPLE IN THAT IT PRESENTS A VERY SIMPLE SET OF FUNCTIONS TO USE.

SO IT HAS THESE THINGS CALLED BUCKETS, WHICH ARE JUST KIND OF LOGICAL COLLECTIONS OF OBJECTS. SO IF YOU ARE A CUSTOMER, YOU CAN HAVE YOUR OWN BUCKET AND THEN YOU PUT THINGS IN THE BUCKET AND YOU GET THINGS OUT OF THE BUCKET.

AND THAT'S WHAT S3 DOES. BUT IT DOES IT REALLY FAST, REALLY RELIABLY WITH JUST RIDICULOUS AMOUNTS OF DATA.

SO A COMMON USE CASE, AND THE ONE THAT IS BEING ACCUSED IN THESE COMPLAINTS, IS THAT IF YOU ARE A COMPANY THAT OPERATES A WEBSITE, YOU WOULD STORE YOUR STATIC CONTENT IN S3.

SO THE THINGS LIKE THE IMAGES FOR YOUR WEBSITE, THE JAVASCRIPT, THE STYLE SHEETS, THE STUFF THAT DOESN'T CHANGE FOR A PARTICULAR CUSTOMER WHEN THEY GO TO THE SITE.

SO THE CUSTOMERS UPLOAD THAT STUFF INTO S3 AS OBJECTS INTO THE BUCKET, AND S3 CALCULATES THIS THING CALLED AN ETAG. IT'S SHORT FOR ENTITY TAG. AND IT'S BASICALLY -- IT'S A MATHEMATICAL FUNCTION OF THE DATA IN THE OBJECT.

AND THE POINT OF IT IS BASICALLY A VERSIONING DEVICE. BECAUSE IF THE DATA IN THE OBJECT CHANGES, THEN THE ETAG CHANGES. SO YOU CAN DETERMINE IF TWO OBJECTS ARE THE SAME BY

10:51:13 DETERMINING THEIR ETAGS INSTEAD OF COMPARING THE OBJECTS
10:51:16 THEMSELVES. AND THAT'S THE POINT OF IT. AND ETAGS ARE A
10:51:21 CONCEPT OF PART OF THE HTTP PROTOCOL, THEY ARE AN OPTIONAL
10:51:26 FEATURE.

10:51:27 SO THE WAY THAT THIS WORKS IN THE COMPLAINT IS THAT THE
10:51:30 CUSTOMER, HERE WEBCO, A GENERIC WEBSITE, UPLOADS THE STATIC
10:51:36 CONTENT INTO S3. S3 GENERATES THIS ETAG, AND THEN WHEN A
10:51:41 CUSTOMER GOES TO THE WEBSITE, MAKES A REQUEST, TYPICALLY THE
10:51:45 WEBSITE WILL GENERATE SOME DYNAMIC CONTENT, THE ACTUAL HTML
10:51:51 THAT IT SENDS TO A SPECIFIC CUSTOMER. IT SENDS IT BACK, AND
10:51:55 THAT HTML HAS A BUNCH OF EMBEDDED REQUESTS FOR THESE, THE
10:52:01 IMAGES AND ALL OF THAT. THE REQUESTS ACTUALLY GO NOT TO THE
10:52:06 COMPANY'S WEB SERVER, BUT TO S3. SO THEY GO DIRECTLY TO S3.
10:52:09 YOU PUT THE OBJECT IN, YOU GET IT OUT.

10:52:11 AND THERE ARE, ON THE ORDER, AS TREVOR ROWE INDICATED IN
10:52:17 HIS DECLARATION, 12 TRILLION SUCH REQUESTS A MONTH TO S3. SO
10:52:23 BASICALLY GO TO ANY WEBSITE, AND IF YOU LOOK AT THE HTML
10:52:27 UNDERNEATH YOU WILL SEE S3 IN THERE FOR ALL THE IMAGES, BECAUSE
10:52:30 ALL OF THEM ARE STORED IN HERE, RIGHT.

10:52:33 AND SO, THE BROWSER GOES DIRECTLY TO S3, IT GETS THE IMAGE
10:52:40 BACK, THE BROWSER USES IT TO RENDER THE PAGE, YOU HAVE YOUR
10:52:44 PUPPY PICTURE. THE BROWSER WILL TYPICALLY STORE THAT IMAGE IN
10:52:47 ITS CACHE, SO IF IT GOES BACK TO THE PAGE IT HAS THE
10:52:50 OPPORTUNITY TO USE IT AGAIN.

10:52:54 SO THE TRICK IS IF YOU INCLUDE AN ETAG, LIKE S3 DOES IN

RESPONSE, THERE'S SOMETHING CALLED A CONDITIONAL GET. SO WHAT HAPPENS IS IF THIS USER GOES BACK TO THE WEB PAGE OR A RELATED WEB PAGE, GETS NEW HTML, THAT HTML HAS ANOTHER "GET" TO THE SAME OBJECT NAME.

SO IT COULD BE PUPPY.JPEG, RIGHT. IT'S THE IMAGE OF THE DOG. INSTEAD OF GOING TO S3 AND SAY, GIVE IT TO ME AGAIN, THE BROWSER SENDS HIS CONDITIONAL GET. SO IT SAYS, GET IT FOR ME, IF NONE MATCH THIS ETAG.

SO BASICALLY IT SAYS, SENDS THIS REQUEST, GOES BACK UP TO S3, S3 COMPARES THE ETAG IN THE REQUEST TO THE ETAG IT HAS FOR THE CURRENT OBJECT. IF THEY ARE THE SAME, IT SAYS YOU ARE GOOD, SENDS IT IN THIS FORMAT, AND YOU CAN USE WHAT'S IN YOUR CACHE. SO THAT'S KIND OF THE BASIC PATH THAT THIS GOES TO.

THE ALTERNATIVE, OF COURSE, IS IF THE OBJECT HAS BEEN CHANGED IN S3, SO IF THERE'S A NEW PUPPY IMAGE, THE WEBSITE OPERATOR HAS CHANGED THEIR WEBSITE, STILL HAS THE SAME NAME, PUPPY.JPEG, BUT IT'S DIFFERENT.

IT WILL GET A NEW ETAG, THE ETAG WILL BE DIFFERENT BECAUSE THE IMAGE IS DIFFERENT.

THE COURT: SO YOU ESSENTIALLY DISAGREE THAT RUBY ON RAILS USES THE FINGERPRINT WHICH IS WHAT UPDATES THIS.

MR. HADDEN: WE WILL GET TO RUBY ON RAILS, AND RUBY ON RAILS HAS NOTHING TO DO WITH THIS.

THE COURT: I'M NOT MAKING THAT DECISION, THAT'S JUST YOUR ARGUMENT.

MR. HADDEN: I WILL EXPLAIN THAT IN A SECOND.

SO NEW REQUEST, NEW HTML. IT'S GOT A REFERENCE AGAIN TO THE PUPPY IMAGE. RESEND OUR CONDITIONAL GET FROM THE BROWSER, SAME ONE, GOES UP TO THE ETAG.

NOW THE ETAGS DON'T MATCH BECAUSE THE PUPPY HAS BEEN UPDATED IN S3. SO INSTEAD, S3 SENDS BACK THE NEW PUPPY IMAGE WITH THIS HTTP 200. OKAY.

NEW IMAGE SHOWS, GETS REPLACED IN THE CACHE, RIGHT.

THIS IS EVERYTHING THAT THE COMPLAINT ACCUSES.

THE COURT: IT'S PRETTY STRAIGHTFORWARD.

MR. HADDEN: STRAIGHTFORWARD, RIGHT. IT'S DONE A ZILLION TIMES FOR MILLIONS OF CUSTOMERS ALL THE TIME. NONE OF THIS DEPENDS ON RUBY ON RAILS.

SO WHAT'S RUBY ON RAILS?

THE COURT: WELL, I WILL WAIT TO SEE, THAT'S PLAINTIFF'S JOB TO LET ME KNOW HOW RUBY ON RAILS CONTRIBUTES HERE.

MR. HADDEN: AS ALLEGED IN THE COMPLAINT, RUBY ON RAILS DOES TWO THINGS. IT'S USED BY WEBSITE OPERATORS TO BUILD WEB APPLICATIONS, IT'S A FRAMEWORK. AND USING THE AMAZON RUBY SDK, THOSE CUSTOMERS CAN KIND OF AUTOMATE THE LOADING OF THEIR DATA INTO S3.

NOW THERE'S THIS OPTIONAL FEATURE WHERE YOU CAN CREATE A FINGERPRINT. WHAT THE FINGERPRINT DOES THOUGH, IS IT GETS ADDED TO THE NAME OF THE OBJECT. SO INSTEAD OF PUPPY.JPEG,

IT'S PUPPYFINGERPRINT.JPEG.

THE COURT: AND THAT IS A RUBY ON RAILS FUNCTION?

MR. HADDEN: THAT IS THE ACCUSED FEATURE OF RUBY ON RAILS.

THE COURT: AND YOU DON'T DISAGREE WITH THE FINGERPRINT.

MR. HADDEN: I DON'T DISAGREE, BUT THE FINGERPRINT JUST BECOMES PART OF THE NAME FOR THE OBJECT IN S3, RIGHT.

SO NOW WE HAVE THIS RED OBJECT, IT'S GOT THE NAME.

THE KEY POINT IS THAT NONE OF THAT HAS ANYTHING TO DO WITH THESE CONDITIONAL GETS.

CONDITIONAL GETS ARE ALL SPECIFIED BASED ON THE ETAG, NOT THE NAME OF THE OBJECT OR THE FILE.

SO EVERYTHING IN THEIR COMPLAINT THAT REFERS TO CONDITIONAL GETS, IF NONE MATCH HEADERS OR ETAGS, IS ALL BASED ON THIS SIMPLE PROCESS THAT WE SAW IN S3. AND IT'S THE SAME PROCESS THAT HAPPENS, IF IT'S A RUBY ON RAILS OBJECT OR ANY OTHER.

REQUEST THE OBJECT, YOU GET THE HTML, YOU GET THE "GET." YOU GO UP TO S3, YOU GET THE OBJECT. IT'S GOT A NAME THAT HAS A FINGERPRINT IN IT, DOESN'T MAKE ANY DIFFERENCE TO THE WEB BROWSER. THE WEB BROWSER WILL MAKE THE CONDITIONAL GET BASED OFF THE ETAG. GOES BACK UP TO S3, EXACT SAME COMPARISON.

THE COURT: SO I -- UNFORTUNATELY, I'M COMING TO THE END OF THIS HOUR AND I AM GOING TO MOVE YOU ALONG.

MR. HADDEN: YEAH.

THE COURT: OKAY. SO IS THERE ANY -- I WANT YOU TO KNOW THAT, AS I SAY, I AM PROBABLY LEANING MORE TO A STAY THAN TO AN INJUNCTION, BECAUSE I REALLY DON'T WANT TO CREATE THE CONCERNS THAT MR. SHERMAN HAS ABOUT HIS FUTURE SUITS. AND I DON'T THINK I CAN REACH OUT THAT FAR AND IN ANY WAY PERIL HIS CLIENT'S RIGHT TO FILE THOSE CASES TIMELY. YOU CAN SERIALLY ASK TO MODIFY AN INJUNCTION AS WELL, ONCE THERE'S AN IDENTIFIED CASE. SO THERE ARE WAYS TO DEAL WITH THIS, CERTAINLY.

SO LET ME JUST, IS THERE ANYTHING ELSE ON -- AND AGAIN, JUST ON THE INJUNCTION OR STAY ISSUE.

MR. HADDEN: NO, YOUR HONOR.

I DO THINK KATZ IN THE FEDERAL CIRCUIT AUTHORIZED YOUR HONOR TO ENJOIN SUITS IN THIS SITUATION, AND THAT THE GRANT OR DENIAL OF THAT INJUNCTION REQUEST IS IMMEDIATELY APPEALABLE TO THE FEDERAL CIRCUIT.

SO I DON'T THINK THERE'S ANY DISPUTE ABOUT THE COURT'S POWER. AS A PRACTICAL MATTER, IF THE COURT IS GOING TO STAY ALL OF THESE CASES, THE EFFECT IS GOING TO BE THE SAME.

THE COURT: OKAY.

MR. SHERMAN, LET ME GIVE YOU THE LAST WORD HERE ON THIS. I'M NOT GOING TO BE DECIDING THIS RIGHT NOW, BUT THIS IS WHEN WE HAVE OUR --

MR. SHERMAN: I UNDERSTAND, AND I WOULD LOVE THE OPPORTUNITY, AND PERHAPS AT OUR NEXT HEARING, TO PRESENT OUR

10:58:50 OWN LITTLE SERIES OF IMAGES, CARTOONS, WHATEVER.

10:58:54 THE COURT: ULTIMATELY, I HAVE A TUTORIAL ON YOUR 10:58:56 PATENT.

10:58:57 MR. SHERMAN: I UNDERSTAND. BUT WE WOULD LIKE THE 10:58:58 MINI-EARLY TUTORIAL AS WELL, AND I KNOW YOU DON'T WANT TO HEAR 10:59:01 IT TODAY.

10:59:03 WITH RESPECT TO SOME OF THE POINTS THAT COUNSEL JUST 10:59:06 RAISED, I DO THINK THAT THE ISSUE OF THE CUSTOMER SUIT 10:59:12 EXCEPTION NEEDS TO BE PUT IN ITS PROPER CONTEXT.

10:59:17 IT IS A CUSTOMER SUIT EXCEPTION THAT DEALS WITH RESELLERS. 10:59:21 IT WORKS GREAT WITH GUN GRIPS, IT WORKS GREAT WITH DEVELOPERS 10:59:28 OF SMART PHONES, SUCH AS THE GOOGLE CASE WHERE THE DEVELOPERS 10:59:33 WERE USING THE GOOGLE TECHNOLOGY AND THEY WERE SELLING THE 10:59:38 SMART PHONES.

10:59:39 THESE INDIVIDUAL DEFENDANTS ARE NOT IN THE BUSINESS, AND 10:59:40 IN FACT, ARE NOT RESELLING ANYTHING OF AMAZON S3. WHILE THEY 10:59:48 MAY BE CUSTOMERS, THEY ARE NOT RESELLERS.

10:59:51 AND I BELIEVE THAT THE FOUNDATION OF THIS EXCEPTION TO THE 10:59:57 FIRST FILED SUIT DOCTRINE, IT'S AN EXCEPTION, WORKS ONLY IF YOU 11:00:02 ARE DEALING WITH CUSTOMERS WHO ARE RESELLERS.

11:00:07 I'M PLEASED THAT COUNSEL DOESN'T SPEAK ABOUT THE PRIOR 11:00:11 AMAZON ACTION, BECAUSE IT OFFERS THEM NO SUPER HERE FOR THE 11:00:19 REASONS THAT WE'VE INDICATED IN OUR OPPOSITION PAPERS.

11:00:23 BUT I THINK, IMPORTANTLY, THE AMAZON DJ ACTION WILL NOT 11:00:28 RESOLVE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS BECAUSE

PERSONAL WEB'S THEORY OF INFRINGEMENT REVOLVES AROUND RUBY ON RAILS NOT S3, IT IS THE RUBY ON RAIL WEBSITE OWNER THAT CONTROLS AND DRIVES THE USE OF ETAGS. THEY ARE THE ONE THAT CONTROL IT AND DRIVE IT, NOT AMAZON S3.

AND THEN FINALLY, YOUR HONOR, WE WOULD LIKE THE COURT AT SOME POINT, IF YOU ARE CONSIDERING THIS, TO GIVE US THE OPPORTUNITY TO PROVIDE SOME FORM OF A SUR REPLY WITH RESPECT TO THE -- I'M SORRY IF I'M MISPRONOUNCING HIS NAME, THE DECLARATION OF THEIR EXPERT. MAYBE NOW, MAYBE WITH RESPECT TO AN AMENDED COMPLAINT, BUT I THINK THAT THAT WOULD BE APPROPRIATE.

THE COURT: WELL, AS I SAID, I WASN'T REALLY RELYING ON IT, BUT AS LONG AS IT'S IN THE RECORD, I DON'T KNOW THAT IT'S --

MR. SHERMAN: WELL, WE READ THE COURT'S STANDING ORDERS ON REPLY DECLARATIONS, THERE WAS NO REASON TO SAY STRIKE IT. IT'S NOT THAT IT WAS EVIDENTIARY --

THE COURT: WHAT WOULD YOU LIKE AS A SUR-REPLY THOUGH, WHAT ARE YOU ASKING FOR?

MR. SHERMAN: I'M ASKING FOR --

THE COURT: I HAVE LIMITS, I MEAN, I'M NOT GOING TO JUST OPEN THE GATES. DO YOU WANT A THREE-PAGE BRIEF AND A FIVE-PAGE DECLARATION?

MR. SHERMAN: YES.

THE COURT: THERE YOU ARE.

MR. SHERMAN: DON'T STOP WHEN YOU'RE AHEAD.

THE COURT: WE WILL DO BUSINESS WELL, MR. SHERMAN. I LIKE THAT. AND HOW MUCH TIME WOULD YOU LIKE?

MR. SHERMAN: TWO WEEKS.

THE COURT: THAT'S REASONABLE. OKAY. THAT'S GOOD.

LET ME -- NOW, I UNDERSTAND FROM MY COURTROOM DEPUTY I WILL SEE YOU ON JUNE 7TH, NOT JUNE 14TH.

MR. SHERMAN: OH.

THE COURT: APPARENTLY THERE WAS --

MR. SHERMAN: I WAS LOOKING AT THE PAPERS.

THE COURT: THAT'S RIGHT, AND APPARENTLY WHEN IT ALL CAME OUT.

SO THE STAY WILL BE UNTIL THE HEARING. YOU UNDERSTAND IF I'M NOT READY TO RULE, I MAY EXTEND IT, AND I'M HOPING TO KNOW FROM THE MDL COMMITTEE AT THAT POINT.

NOW YOU MAY RUN TO THE MDL COMMITTEE, MR. SHERMAN, AND SUGGEST A DIFFERENT JUDGE AFTER THIS HEARING, I DON'T KNOW.

MR. SHERMAN: OH, THERE'S NO WAY THAT'S GOING TO HAPPEN, YOUR HONOR.

AND HAVE A HAPPY FLAG DAY SINCE I WON'T SEE YOU ON THE 14TH.

THE COURT: ALL RIGHT.

I THINK THAT TAKES CARE OF EVERYTHING. THIS IS, YOU KNOW, NECESSARILY BY THE COMPLEXITY OF THE NUMBER OF PARTIES AND ISSUES FLOATING AROUND, MY GUESS IS THESE HEARINGS WILL BE A

LITTLE BIT LENGTHY WHEN WE HAVE THEM.

AND ONCE I GET -- ONCE THE GROUND STOPS MOVING AND I KNOW WHAT I ACTUALLY HAVE AND ONCE YOU'VE SERVED ALL THE PARTIES THAT THERE ARE GOING TO BE, WE WILL PROBABLY HAVE TO HAVE SOME KIND OF OMNIBUS CASE MANAGEMENT CONFERENCE WHERE WE CAN REALLY SPEND A COUPLE OF HOURS MAPPING OUT HOW WE PROCEED.

BECAUSE, WELL, AS I SAY, I COULD END UP WITH ZERO OF THESE CASES, JUST MY 30, BECAUSE IT'S NOT AN MDL, OR ALL OF THEM. AND I DON'T KNOW HOW THE MDL COMMITTEE WORKS. THEY DON'T ASK MY OPINION.

MR. SHERMAN: UNDERSTOOD.

THANK YOU VERY MUCH FOR YOUR TIME.

THE COURT: ALL RIGHT. THANK YOU ALL.

MR. SHERMAN: WE ARE TOLD THAT THERE WAS A CMC TODAY. IS THERE A CMC SET IN THE DJ ACTION?

THE COURT: YOU KNOW WHAT, I MISSED THAT ENTIRELY. IS THAT RIGHT, WE HAD A CMC IN YOURS?

MR. MONROE: I THINK YOU GUYS HAD, IN THE ONE OF THE MINUTE ORDERS, I THOUGHT I REMEMBER SEEING ONE WAS A CMC.

THE COURT: FOR THE AMAZON CASE?

MR. MONROE: I THINK IT WAS IN THE SAME ORDER THAT RESET THE HEARING DATE OF THE MOTION TO DISMISS TO --

THE COURT: SO THAT'S ON THE 7TH.

MR. MONROE: BUT I THOUGHT IT SET A CMC DATE ALSO.

THE COURT: OH, YOU DIDN'T MEAN TODAY HAVING A CMC.

MR. MONROE: THE QUESTION IS WHETHER THAT SHOULD BE MOVED OFF.

THE CLERK: IT IS ALSO SET ON THE 7TH.

THE COURT: I DON'T KNOW THAT IT'S BENEFICIAL TO HAVE IT THEN.

MR. MONROE: RIGHT. THAT'S WHY I RAISED IT.

MR. SHERMAN: I AGREE.

THE COURT: ALL RIGHT. I WILL PUT OUT AN ORDER VACATING THAT CMC DATE. AND WOULD YOU REMIND ME, WE WILL HAVE TO FIGURE OUT WHEN TO RESET IT.

I WOULDN'T DO ANYTHING, I WOULDN'T KNOW UNTIL AFTER THE MDL COMMITTEE IS DONE. THANK YOU FOR MENTIONING THAT. I WILL VACATE THAT DATE.

MR. MONROE: THANK YOU.

(THE PROCEEDINGS WERE CONCLUDED AT 11:05 A.M.)

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

______________________________
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185 DATED: 4/28/18